IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 39560-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PAULINO FLORES, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

COONEY, J. — Paulino Flores was convicted of second degree assault and attempted second degree kidnapping. The jury returned special verdicts, finding Mr. Flores was armed with a deadly weapon during the commission of both crimes.

On appeal, Mr. Flores argues one of the deadly weapon enhancements is not supported by sufficient evidence, and the victim penalty assessment (VPA) was improperly imposed against him. We conclude sufficient evidence supported the enhancement but remand for the limited purpose of striking the VPA.

BACKGROUND

Mr. Flores was charged with one count of second degree assault and two counts of attempted second degree kidnapping. The State alleged a weapon enhancement on each count. The charges arose after Mr. Flores entered a restaurant in Sunnyside, Washington, owned by Lilian Cazares' parents. After entering the restaurant, Mr. Flores continued to a small office inside the building that was occupied by Ms. Cazares and her five-year-old daughter, Gracie.[1] Meanwhile, Ms. Cazares' parents were outdoors selling food for the upcoming Cinco de Mayo weekend. Ms. Cazares' brothers (Ugo Robledo and Elidro Robledo[2]), her sister-in-law, her aunt (Veronica Lara), and a dozen or so patrons were also present outdoors.

Ms. Cazares had entered the office to provide Gracie with video entertainment on the business computer. While accessing the computer, Ms. Cazares saw a stranger, Mr. Flores, walk into the office steadily holding a "really sharp object" on his right side. Rep. of Proc. (RP) at 230. The object was about 18 inches in length, appeared similar to

---

[1] To protect the privacy interests of Ms. Cazares' child, we use a pseudonym throughout this opinion. Gen. Order of Division III, *In re the Use of Initials or Pseudonyms for Child Victims or Child Witnesses*, (Wash. Ct. App. June 18, 2012), https://www.courts.wa.gov/appellate_trial_courts/?fa=atc.genorders_orddisp&ordnumber=2012_001&div=III.

[2] Ugo and Elidro Robledo are referred to by their first names for clarity. No disrespect is intended.

a crowbar, and "had a sharp edge on the front of it." RP at 231. The sight of Mr. Flores with the object scared Ms. Cazares.

Mr. Flores told Ms. Cazares "you're coming with me." RP at 231. Ms. Cazares placed Gracie behind her for Gracie's protection. As Mr. Flores advanced on Ms. Cazares and Gracie, he stated in an affirmative tone, "[y]ou're leaving with me" and demanded she "start moving." RP at 232. Feeling scared and vulnerable, Ms. Cazares took a step forward when Mr. Flores told her to "hurry up." RP at 234. While exiting the office, Ms. Cazares saw Ms. Lara through a window and waved her hands as a signal for help. Ms. Cazares did not yell in an attempt to keep Mr. Flores from turning around. As they departed the building, Mr. Flores turned and told Ms. Cazares to "hurry up" and "start walking." RP at 236. Ms. Cazares noticed Ms. Lara running to tell her brothers and father that something was wrong. Ugo then approached Mr. Flores, which allowed Ms. Cazares to reenter the building to be with Gracie.

Ugo asked Mr. Flores, "what are you doing?" RP at 348. In response, Mr. Flores claimed Ms. Cazares was his wife. Ugo then directed Mr. Flores to leave. Mr. Flores charged once at Ugo with the steel or aluminum "sharp, pointy object" that was "[b]igger than a ruler . . . [m]ore than 12 inches" swinging toward Ugo's abdomen. RP at 349, 352. In response, Ugo jumped backward, fearing for his life. Mr. Flores swung at Ugo with the object a second time, causing Ugo to call the police. The third attempt by Mr. Flores

3

was an aggressive advance without swinging the sharp object. Restaurant patrons attempted to intervene, some by drawing their firearms.

Mr. Flores fled the area at the sound of approaching sirens. He was later arrested. When told by law enforcement personnel there had been an attempted abduction, Mr. Flores responded, "that was my wife … I was trying to get her to go." RP at 305.

Mr. Flores' charges were tried to a jury. After the State rested its case, the court dismissed the charge of attempted second degree kidnapping related to Gracie on Mr. Flores' motion. Following deliberations, the jury found Mr. Flores guilty of second degree assault and attempted second degree kidnapping. The jury also returned special verdicts, finding Mr. Flores was armed with a deadly weapon during the commission of both crimes.

Mr. Flores was sentenced to 53 months of incarceration on the assault charge and a concurrent 46.5 months on the attempted kidnapping charge. The court ordered a consecutive 6-month deadly weapon enhancement to the assault charge and a consecutive 12-month deadly weapon enhancement to the attempted kidnapping charge. Mr. Flores' sentence totaled 71 months of incarceration. The court further ordered the then-mandatory VPA.

Mr. Flores timely appeals.

4

No. 39560-0-III
*State v. Flores*

ANALYSIS

SUFFICIENCY OF EVIDENCE

Mr. Flores argues the deadly weapon enhancement associated with his conviction for attempted second degree kidnapping is not supported by sufficient evidence. Specifically, Mr. Flores asserts the evidence failed to establish that the metal object was employed in a manner that was likely to produce or may easily and readily produce death. We disagree.

The sufficiency of the evidence is a question of law this court reviews de novo. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). In a sufficiency of the evidence challenge, "we review the evidence in the light most favorable to the State" to determine whether any rational trier of fact could have found the aggravating factor beyond a reasonable doubt. *State v. Varga*, 151 Wn.2d 179, 201, 86 P.3d 139 (2004). "A claim of insufficiency admits the truth of the State's evidence and all inferences that can reasonably be drawn from it." *State v. DeVries*, 149 Wn.2d 842, 849, 72 P.3d 748 (2003). "[I]nferences based on circumstantial evidence must be reasonable and cannot be based on speculation." *State v. Vasquez*, 178 Wn.2d 1, 16, 309 P.3d 318 (2013).

To enhance a defendant's sentence under RCW 9.94A.533(4), the State must prove the defendant was armed with a deadly weapon. "A person is 'armed'… if a weapon is easily accessible and readily available for use, either for offensive or defensive purposes." *State v. Barnes*, 153 Wn.2d 378, 383, 103 P.3d 1219 (2005). However, "[t]he

5

mere presence of a deadly weapon at the crime scene is insufficient to show that the defendant is 'armed.'" *Id.* Consequently, the State must show a nexus between the defendant, the crime, and the deadly weapon. *Id.*

A "deadly weapon" is an instrument listed as a deadly weapon in RCW 9.94A.825 or "an implement or instrument which has the capacity to inflict death and from the manner in which it is used, is likely to produce or may easily and readily produce death." RCW 9.94A.825. Here, the court found the instrument was not a deadly weapon per se. Accordingly, the court instructed the jury that a "deadly weapon means an implement or instrument which has the capacity to inflict death and from the manner in which it is used, is likely to produce, or may easily and readily produce, death." Clerk's Papers (CP) at 118.

We conclude there was sufficient evidence to support the jury's finding that Mr. Flores was armed with an instrument that had the capacity to inflict death and was easily and readily available to produce death while committing the crime of attempted kidnapping.

Ms. Cazares testified that Mr. Flores, standing in close proximity to her while demanding she leave with him, was armed with a "really sharp object" about "18 inches long" that he held with the "[t]he sharp edge [ ] out." RP at 230-31, 233. Mr. Flores' presence with the object caused Ms. Cazares to feel scared and vulnerable. Ugo's perception of the situation mirrored Ms. Cazares'. Ugo testified the object in Mr. Flores'

possession caused him to fear it was a life or death situation. Moreover, a couple of patrons drew their firearms after witnessing Mr. Flores swing the object twice.

The 18-inch, sharp, metal object Mr. Flores was holding could have easily killed Ms. Cazares. Further, Mr. Flores was holding it with the sharp edge facing out, toward Ms. Cazares, and could therefore have easily used the object for "offensive or defensive purposes," or to hurt or kill Ms. Cazares, at any time. *Barnes*, 153 Wn.2d at 383.

In reviewing the evidence in the light most favorable to the State, and accepting the truth of the State's evidence and all inferences that can reasonably be drawn from it, the object Mr. Flores possessed while committing the attempted kidnapping was easily accessible and readily available for offensive or defensive purposes and had the capacity to easily and readily produce death. Sufficient evidence supports the jury's finding that Mr. Flores was armed with a deadly weapon within the meaning of RCW 9.94A.825 during the commission of the attempted second degree kidnapping.

VICTIM PENALTY ASSESSMENT

Mr. Flores requests we remand his case to have the VPA struck from his judgment and sentence. The State concedes.

Former RCW 7.68.035(1)(a) (2018) required a VPA be imposed on any individual found guilty of a crime in superior court. In April 2023, the legislature passed Engrossed Substitute House Bill 1169 (H.B. 1169), 68th Leg., Reg. Sess. (Wash. 2023), that amended RCW 7.68.035 to prohibit the imposition of the VPA on indigent defendants.

RCW 7.68.035 (as amended); LAWS OF 2023, ch. 449, § 1. H.B. 1169 took effect on July 1, 2023. Amendments to statutes that impose costs upon convictions apply prospectively to cases pending on appeal. *See State v. Ramirez*, 191 Wn.2d 732, 748-49, 426 P.3d 714 (2018).

Mr. Flores was found to be indigent, and because Mr. Flores' case is pending on direct appeal, the amendment applies.

## CONCLUSION

Sufficient evidence supports the jury's deadly weapon finding on Mr. Flores' conviction for attempted second degree kidnapping. We remand for the limited purpose of striking the VPA from Mr. Flores' judgment and sentence.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Cooney, J.

WE CONCUR:

_____     _____
Pennell, J.     Staab, A.C.J.