IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 38188-9-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ANGIE BENAVIDES COLE, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Angie Cole appeals her convictions for stalking and the sentence imposed as a result of her convictions for stalking, violation of a protection order, and malicious mischief. We affirm the convictions but remand for modification of the sentence.

## FACTS

Angie Cole and Darryl Carlton were romantically involved for several years. The relationship soured and Ms. Cole started accusing Mr. Carlton of participating in pornography, sex trafficking, and inappropriate communication with adolescent girls. Her accusations extended to Angela Mascarelli, Mr. Carlton's former wife and the mother

of his children. In June 2015, soon after Mr. Carlton and Ms. Cole separated, Mr. Carlton

petitioned for a protection order.

Mr. Carlton testified that a subsequent protection order failed to deter Ms. Cole

from harassing Mr. Carlton and his children. Among other things, Ms. Cole continued

making false accusations of pornographic conduct. Mr. Carlton obtained additional

protection orders against Ms. Cole on July 28, 2017, and August 10, 2018. The 2018

order read, in part:

> A. do not cause, attempt, or threaten to cause bodily injury to, assault, sexually assault, harass, stalk, or keep under surveillance the protected person.
> B. do not contact the protected person directly, indirectly, in person or through others, by phone, mail, or electronic means, except for mailing or service of process of court documents through a third party, or contact by the defendant's lawyers.
> C. do not knowingly enter, remain, or come within 1,000 feet . . . of the protected person's residence, school, workplace, . . . .

Ex. 37B at 1.

In March 2020, Mr. Carlton and Ms. Mascarelli decided Ms. Mascarelli should

move into Mr. Carlton's home in order to facilitate visitation with their children in light

of COVID-19 health concerns. On the morning of March 10, Ms. Mascarelli noticed

someone had defaced her vehicle. Her car was parked next to Mr. Carlton's vehicle,

approximately twenty feet from his home's back door. On the driver side of the vehicle

2

was the word "'Whore.'" Report of Proceedings (RP) (Apr. 6, 2021) at 272. Ms. Mascarelli did not report this incident to police.

Ms. Mascarelli again found her car was vandalized on March 25, 2020. This time the writing stated she and her "'ex'" "'are both'" "'puss[ies].'" *Id*. at 275; Ex. 25. Ms. Mascarelli interpreted the message as referring to herself and Mr. Carlton, her ex-husband. According to Mr. Carlton, the entire message was five paragraphs long and stated, in part, something along the lines of, "'If you're looking for a good time you should have just called me,'" and "'[Y]ou two deserve each other.'" *Id*. at 232. At this point, Ms. Mascarelli contacted the police. Ms. Mascarelli was advised to obtain a motion-activated camera in case the perpetrator returned.

A third act of vandalism occurred on March 29, 2020, this time on Ms. Mascarelli's car hood and rear bumper. The vandalism on the hood featured a message stating "'Making triple-X movies. Want to join. Contact me on Craigslist—for sex.'" *Id*. at 278. Ms. Mascarelli could not decipher the writing on the rear bumper of her vehicle, although she thought it might have said, "'Find me.'" *Id*. She reported this incident to the police.

Unfortunately, the motion-activated camera Ms. Mascarelli had installed failed to capture an image of the perpetrator. However, Ms. Mascarelli believed Ms. Cole was

responsible. Her reasoning was that she had no other enemies, nor was it common knowledge where she was now living.

Ms. Mascarelli reported the third incident to police and then Mr. Carlton installed additional cameras.

Around 3:30 a.m. on March 31, 2020, Mr. Carlton received an alert on his cell phone that his cameras had captured motion. Mr. Carlton subsequently observed video footage of Ms. Cole walking around his car and looking into Ms. Mascarelli's vehicle. This incident was again reported to the police.

Due to COVID-19 restrictions, the police never went out to Mr. Carlton's residence to investigate the vandalism allegations. As a result, they never measured the distance between Ms. Mascarelli's car and Mr. Carlton's house. Nevertheless, the March 31 video showed Ms. Cole walking within 1,000 feet of Mr. Carlton's residence.

The State charged Ms. Cole with three criminal counts: violation of a protection order on March 31, 2020; malicious mischief in the second degree (over $750) between the dates of March 10, 2020, and March 29, 2020; and felony stalking between the dates of March 24, 2020 and March 31, 2020. Ms. Cole exercised her right to a jury trial. During opening statements, the prosecutor explained the State's charges as follows:

> The [S]tate has accused [Ms. Cole] of violating the restraining order, of coming within 1,000 feet of [Mr. Carlton's] home where he and both his

children reside, all protected parties under the order. The [S]tate has accused Ms. Cole of spray-painting Angela Mascarelli's car on those three occasions causing damage of more than $750. And the [S]tate has accused Ms. Cole of repeatedly harassing and stalking—Mr. Carlton in those days in March when she keeps coming back over to the house, spray-painting the car, and then coming back over on the 31st.

*Id*. at 194-95.

The State presented testimony consistent with the aforementioned summary and the jury convicted Ms. Cole as charged. At sentencing, the trial court merged Ms. Cole's convictions for violating a protection order and stalking. Nonetheless, the court listed both convictions on the judgment and sentence. Despite finding Ms. Cole indigent and not making findings regarding the impact of any mental health condition on Ms. Cole's conduct, the court imposed community custody fees and a condition requiring mental health treatment. The court also issued a domestic violence no-contact order protecting Mr. Carlton and his children until April 19, 2099, a date decades beyond the statutory maximums for Ms. Cole's crimes.

ANALYSIS

*Sufficiency of the evidence for the stalking conviction*

Ms. Cole argues the State presented insufficient evidence to justify her stalking conviction. Her primary claim is that the State failed to prove repeated acts of harassment, as necessary for a felony stalking conviction. Alternatively, she argues the State failed to

prove that the acts of vandalism attributed to her were directed at Mr. Carlton, the

protected party.

When faced with a challenge to the sufficiency of the State's evidence, our review

is de novo. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). We ask "whether,

after viewing the evidence in the light most favorable to the State, any rational trier of

fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192,

201, 829 P.2d 1068 (1992). "[A]ll reasonable inferences from the evidence must be

drawn in favor of the State and interpreted most strongly against the defendant." *Id.*

### 1. Whether the State proved repeated acts of harassment

Ms. Cole contends the State failed to prove facts necessary to elevate her offense

from misdemeanor to felony harassment—i.e., proof of repeated violations of a protection

order.[1] Ms. Cole appears to acknowledge that protection orders can be violated in a

variety of ways. But she claims that under the court's instructions to the jury, only one

type of violation qualified to justify a felony stalking conviction—a protection order

violation committed by coming or remaining within 1,000 feet of Mr. Carlton's

---

[1] The crime of stalking requires proof of repeated acts of harassment.
RCW 9A.46.110(1)(a). Generally, stalking is considered a gross misdemeanor.
RCW 9A.46.110(5)(a). But the crime is elevated to a class B felony when it is
committed in violation of a protection order. RCW 9A.46.110(5)(b).

residence.[2] Because the trial evidence showed only one act of vandalism within the 1,000

foot zone during the March 24 to 31 charging period (i.e., the March 31 incident that was

caught on camera), Ms. Cole claims the evidence before the jury was insufficient to prove

repeated violations.[3]

The instructions at issue in Ms. Cole's case provide as follows:

INSTRUCTION 7

A person commits the *crime of violation of a court order* when he or she knows of the existence of a no-contact order, and knowingly violates a provision of the order prohibiting the person from knowingly coming within or remaining within a specified distance of a location.

Clerk's Papers (CP) at 43 (emphasis added).

INSTRUCTION 8

To convict the defendant of the *crime of violation of a court order*, each of the following elements of the crime must be proved beyond a reasonable doubt:
    (1)  That on March 31, 2020 there existed a no-contact order applicable to the defendant;
    (2)  That the defendant knew of the existence of the order;

---

[2] Under the law of the case doctrine, a court's jury instructions may narrow the type of proof required for a charged offense. *See State v. Hickman*, 135 Wn.2d 97, 102, 954 P.2d 900 (1998).

[3] The State did not include the March 10 incident in the date range for the stalking charge despite testimony that it took place within 20 feet of Mr. Carlton's home. This may have been because in this incident, the slur scrawled on the vehicle appears to have been directed only at Ms. Mascarelli, who was not a protected party under the terms of the protection order.

(3)  That on or about said date, the defendant knowingly violated a provision of the order prohibiting the defendant from knowingly coming within or remaining within a specified distance of a location, and
(4)  That the defendant's acts occurred in the State of Washington.

*Id*. at 44 (emphasis added).

## INSTRUCTION 9

A person commits the *crime of stalking* when, without lawful authority, he or she intentionally and repeatedly harasses a second person, placing that person in reasonable fear that the first person intends to injure him or a third person or the second person's property or a third person's property, either with the intent to frighten, intimidate, or harass, or under circumstances where the first person knows or reasonably should know that the second person is afraid, intimidated, or harassed, *and the first person violated a protective order protecting the second person*.

*Id*. at 45 (emphasis added).

## INSTRUCTION 10

To convict the defendant of the *crime of stalking*, each of the following seven elements must be proved beyond a reasonable doubt:
(1)  That on or between March 24 – March 31, 2020, the defendant intentionally and *repeatedly harassed* Darryl Carlton,
(2)  That Darryl Carlton was placed in fear that the defendant intended to injure him or another person or the property of Darryl Carlton or another person,
(3)  That the feeling of fear was one that a reasonable person in the same situation would experience under all the circumstances.
(4)  That the defendant
    (a)  intended to frighten, intimidate, or harass Darryl Carlton, or

(b) knew or reasonably should have known that Darryl Carlton was afraid, intimidated, or harassed even if the defendant did not intend to place him in fear or to intimidate or harass him,

(5) That the defendant acted without lawful authority,

(6) *That the defendant's acts were in violation of a protective order protecting Darryl Carlton*, and

(7) That any of the defendant's acts occurred in the State of Washington.

*Id*. at 46 (emphasis added); *see also* former RCW 9A.46.110 (2013).

Ms. Cole contends that because the stalking instructions (9 and 10) require proof of repeated violations of a protective order, they necessarily require proof of the type of violation of court order defined in instruction 7. Because instruction 7 limits a violation of a court order to violation of a distance provision, Ms. Cole claims the stalking instructions also require proof of violations of distance provisions.

Ms. Cole's analysis fails to distinguish the elements of the crime of violation of a court order from the elements relevant to the crime of stalking.

We agree with Ms. Cole that instructions 7 and 8, which addressed the "crime of violation of a court order," CP at 43-44, limited the jury's assessment to a distance-based violation. Thus, to convict Ms. Cole of the crime of violation of a no-contact order, the State was required to prove she came within 1,000 feet of Mr. Carlton's residence. There is no dispute that this was proven as to the March 31, 2020, violation.

But the "crime of stalking," as referenced in instructions 9 and 10, *id*. at 45-47, is different from the crime of violation of a court order. To prove the crime of stalking, the court's instructions required only a generic violation of a protection order. The instructions did not require violation of a distance related prohibition or that the violation constitute the "crime of violation of a court order" as discussed in instruction 7. Thus, whether Ms. Cole violated the terms of the protection order was governed solely by the terms of the order.

The August 10, 2018, protection order set forth a variety of prohibitions on Ms. Cole's conduct, only one of which was related to distance. As argued by the prosecutor in rebuttal,[4] disobeying any of the terms of the order would qualify as a violation of the order, not just disobeying the distance prohibition. Thus, Ms. Cole could have violated the protection order by engaging in harassing or stalking conduct against Mr. Carlton, regardless of where that conduct took place.

The trial evidence was sufficient to show multiple violations of the August 10, 2018, protection order, as required by the court's stalking instructions. This aspect of Ms. Cole's sufficiency challenge therefore fails, as do her arguments that the prosecutor committed misconduct by arguing that the court's instructions did not restrict the type of

---

[4] Ms. Cole made a similar argument to the jury.

protection order violations relevant to the stalking charge.[5]

### 2. *Whether the State proved Mr. Carlton was the victim of the acts of vandalism*

Ms. Cole also contends the State failed to prove stalking because the evidence showed the vandalism was directed at Ms. Mascarelli, not Mr. Cole as the protected party. We disagree. The messages left on Ms. Mascarelli's car on March 25 and 29 have meaning only if they are interpreted as directed to both Mr. Carlton and Ms. Mascarelli. Ms. Cole's references to sex and pornography echoed her long-standing harassment of Mr. Carlton. By vandalizing Ms. Mascarelli's car with insulting messages directed at both Ms. Mascarelli and Mr. Carlton, Ms. Cole engaged in repeated acts of harassment. This was sufficient to satisfy the terms of the court's instructions.

*Claims pertaining to sentencing*

Ms. Cole identifies three sentencing errors: (1) inclusion of both the conviction for stalking and for violation of a no-contact order in the judgment and sentence, despite the trial court's finding that the crimes merged, (2) inclusion of mental health treatment as a community custody condition, despite lack of evidence of a proven mental health

---

[5] Ms. Cole does not argue on appeal that the jury instructions were confusing. Nor did she object to the instructions at trial. Had Ms. Cole attempted to raise an argument on appeal regarding confusing instructions, she would likely run into error preservation problems. *See State v. O'Hara*, 167 Wn.2d 91, 100-01, 217 P.3d 756 (2009).

condition or crime-relatedness, and (3) imposition of supervision fees. The State concedes

error. We accept the State's concessions and remand for removal of the following from

the judgment and sentence: (1) reference to a conviction for violation of a protection

order, (2) a community custody condition requiring mental health treatment, and

(3) community supervision fees.

*Domestic violence no-contact order*

At sentencing, the court may impose a no-contact order in conjunction with

a felony judgment and sentence, so long as the length of the order does not exceed

the maximum sentence established for the underlying offense. RCW 10.99.050. The

statutory maximum for Ms. Cole's stalking offense is 10 years. RCW 10.99.050(2)(d);

RCW 9A.20.021(1)(b). Yet the court imposed a 78-year no-contact order. The State

concedes error and we accept this concession. On remand, the court shall correct the

domestic violence restraining order so that it comports with the applicable statutory

maximum term.

## CONCLUSION

Ms. Cole's convictions are affirmed. We remand for the trial court to: (1) strike the

violation of a protection order conviction from the judgment and sentence, (2) strike the

mental health treatment community custody conviction from the judgment and sentence,

12

No. 38188-9-III
*State v. Cole*

(3) strike the community custody supervision fee provision from the judgment and sentence, and (4) amend the domestic violence no-contact order so that its effective period does not exceed the 10-year statutory maximum.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Fearing, J.

13